ISMAIL J. RAMSEY (CABN 189820)
United States Attorney

THOMAS A. COLTHURST (CABN 99493)
Chief, Criminal Division

ANNA NGUYEN (CABN 335873)
Special Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7200
    Fax: (415) 436-7234
    Anna.Nguyen@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>RICARDO MIRENA-MURILLO A/K/A RICARDO MIRENA A/K/A RICARDO ARTURO MAIRENA-MURILLO,<br><br>    Defendant. | CASE NO. 3:23-CR-00056 TLT<br><br>**MEMORANDUM IN SUPPORT OF UNITED STATES' MOTION FOR DETENTION**<br><br>Date: April 6, 2023<br>Time: 10:30 AM<br>Court: Hon. Lisa J. Cisneros |

## I. INTRODUCTION

On February 15, 2023, a federal grand jury in the Northern District of California returned an indictment charging Defendant, Ricardo Mirena-Murillo, with six counts of possession with intent to distribute controlled substances on three separate occasions in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C), and (b)(1)(B)(vi). Dkt. 2. The six counts pertain to 40 grams or more of fentanyl (Counts One & Three); methamphetamine (Counts Two, Four, and Six), and fentanyl (Count 5). *Id.* Moreover, on April 3, 2023, in the Tenderloin neighborhood of Eddy Street and Van Ness Avenue, Defendant was witnessed selling suspected narcotics right before he was arrested and found with an additional 184 grams of fentanyl, 61 grams of cocaine, and 51 grams of methamphetamine. Notably, all of Defendant's prior arrests were also in the specific area of Eddy Street and Van Ness Avenue, and altogether, Defendant possessed over 751 grams of fentanyl, 97 grams of cocaine, and 95 grams of methamphetamine. Despite multiple arrests and a pending court case out of San Francisco County, Defendant continued to engage in the same conduct in the same location.

The record demonstrates Defendant is a danger to the community and presents a flight risk. Defendant cannot overcome the presumption that there are no conditions or combination of conditions that can ensure the safety of the community or secure his appearance before the Court. Accordingly, the government respectfully requests the Court order Defendant detained pending trial.

## II. FACTUAL BACKGROUND

### A. On August 25, 2022, Defendant sold fentanyl to an undercover police officer

On August 25, 2022, at approximately 2:36 PM, San Francisco Police Department ("SFPD") conducted an undercover operation in the area of Eddy Street between Van Ness Avenue and Polk Street when Defendant sold $20 worth of fentanyl to an undercover officer ("UC-1"). Defendant took out a digital scale that he then placed on the ground of the sidewalk to weigh out the fentanyl before he handed it to UC-1 and accepted $20 of marked city funds. Shortly after the sale, Defendant was arrested and found with a digital scale plus a myriad of narcotics which included 140 grams of fentanyl, 25 grams of methamphetamine, 10 grams of cocaine, heroin, and suspected alprazolam and oxycodone pills. With the exception of the pills, all of the drugs were processed, and lab tested positive.

### B. On January 9, 2023, Defendant sold drugs to a woman in a wheelchair and used a "holder"

On January 9, 2023, at approximately 2:15 PM, SFPD officers were in the area of Eddy Street between Van Ness Avenue and Polk Street when they witnessed Defendant sold suspected narcotics to two individuals including a woman in a wheelchair. This time, Defendant used a "holder" to carry the narcotics for him. A holder is typically someone who is addicted to narcotics and will get paid with free narcotics of their choice based on the fact that they are holding the drug dealer's supply of narcotics to assist the drug dealer in avoiding law enforcement detection. Undercover officers observed Defendant unzip a backpack on the holder, remove suspected narcotics from the backpack, weigh the suspected narcotics on a digital scale, and handed it to the buyer. When SFPD officers tried to effect an arrest, the holder discarded the backpack. Both Defendant and holder were eventually arrested, and the backpack was seized; altogether, officers found over 336 grams of fentanyl, 16 grams of cocaine, and 9 grams of methamphetamine from the backpack and Defendant's person. All of the drugs were processed, and lab tested positive.

**C. On January 19, 2023, Defendant sold drugs to a woman on Eddy Street**

About ten days after the prior incident and arrest, SFPD officers witnessed Defendant engaged in suspected narcotics sales activity again in the area of Eddy Street and Van Ness Avenue. On January 19, 2023, officers observed Defendant provide a woman with suspected narcotics from a clear sandwich bag that he removed from his backpack and in return, the woman handed him money. When Defendant was arrested, officers found over 89 grams of fentanyl, 10 grams of methamphetamine, 9 grams of cocaine, along with suspected counterfeit pills. With the exception of the suspected counterfeit pills, all of the drugs were processed, and lab tested positive.

**III.   LEGAL STANDARD**

Under the Bail Reform Act of 1984, the Court must detain a defendant before trial without bail where "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1). Detention is appropriate where a defendant is either a danger to the community or a flight risk; the government need not prove that both factors are present. *United States v. Motamedi*, 767 F.2d 1403, 1406 (9th Cir. 1985).

A finding that a defendant is a danger to the community must be supported by clear and convincing evidence, but a finding that a defendant is a flight risk need only be supported by a preponderance of the evidence. *Id.*

"[T]he Bail Reform Act mandates an individualized evaluation guided by the factors articulated in [18 U.S.C.] § 3142(g)." *United States v. Diaz-Hernandez*, 943 F.3d 1196, 1199 (9th Cir. 2019). Those factors are: (i) the nature and circumstances of the offense charged; (ii) the weight of the evidence against the defendant; (iii) the history and characteristics of the defendant, including the defendant's character, physical and mental condition, family and community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings, as well as whether the crime was committed while the defendant was on probation or parole; and (iv) the nature and seriousness of the danger to any person or to the community that would be posed by the defendant's release. *See* 18 U.S.C. § 3142(g); *United States v. Winsor*, 785 F.2d 755, 757 (9th Cir. 1986).

Where there is probable cause that a defendant has violated an offense for which a maximum of ten years in prison or more is prescribed in the Controlled Substances Act, courts apply a rebuttable presumption that no condition or combination of conditions will reasonably assure Defendant's appearance as required and the safety of the community. *See* 18 U.S.C. § 3142(e)(3)(A). Under this scheme, the burden of production shifts to Defendant. *United States v. Hir*, 517 F.3d 1081, 1086 (9th Cir. 2008). Even if Defendant rebuts the presumption, the presumption is not erased; instead, it remains in the case as an evidentiary finding militating against release that is to be weighted along with other relevant factors. *See id.* (citation omitted).

**IV.   ARGUMENT**

1. <u>Defendant faces a rebuttable presumption in favor of detention.</u>

When Defendant was arrested, he was witnessed selling drugs to a man in the same area of Eddy Street and Van Ness Avenue while he possessed a variety and total quantities of drugs consistent with an intent to distribute. Adding up the amounts of narcotics sold or seized across all of Defendant's law enforcement contacts since August 2022, Defendant had a total combined drug weight of approximately 751 grams of fentanyl, 97 grams of cocaine, and 95 grams of methamphetamine. There is probable cause to believe Defendant committed an offense for which a maximum term of imprisonment of ten

years or more is prescribed in the Controlled Substances Act, and the relevant conduct reveals a consistent pattern of narcotics trafficking. As a result, there is a rebuttable presumption that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community. *See* 18 U.S.C. § 3142(e)(3)(A). As described below, Defendant will be unable to overcome this presumption.

2. <u>Defendant cannot overcome the presumption that he is a flight risk.</u>

Defendant has no known permanent address, phone number, employment, or family in the Bay Area. At the same time, Defendant's status and length in the United States are unclear. In fact, Defendant's true name is also unknown as various versions of his name has been used. Defendant is not amenable to supervision and accordingly is a demonstrable flight risk.

Defendant has shown he possesses the financial means to abscond as he possessed narcotics with a street value of over $14,000. To emphasize, prior to Defendant's recent arrest on April 3, 2023, he already had over $11,000 (street value worth) of narcotics seized but was still able to obtain more narcotics, nonetheless. Thus, it is also reasonable to think that he has connections to networks that may assist him in his flight from court-imposed oversight given his access to over 944 grams of total combined weight of drugs.

Lastly, Defendant faces a serious penalty if convicted. Even if the safety valve were to apply, Defendant still faces a mandatory minimum of five years and a Guidelines range of 57-71 months — which is not insignificant. That penalty—more severe than any penalty he has faced to date—creates a strong incentive for Defendant to flee immediately if released. *See United States v. Gebro*, 948 F.2d 1118, 1122 (9th Cir. 1991) (strong evidence of guilt "makes it more likely that he will flee"). The preponderance of the evidence supports finding Defendant to be a flight risk.

3. <u>Defendant cannot overcome the presumption that he is a danger to the community.</u>

Although all controlled substances are dangerous, fentanyl is particularly so. Just two milligrams of fentanyl can kill, and Defendant was caught in this instant with possession of 184 *grams* not including the fentanyl seized from his arrests in August 2022, and January 2019. If Defendant is released and able to continue distributing any controlled substances—but particularly fentanyl—that poses a severe danger to the community and all those who come to the Tenderloin and surrounding areas

searching for fentanyl or who even inadvertently come into contact with the substance. *See, e.g.*, *United States v. Alfonso Ramos*, No. 3:20-mj-71799-MAG-1 (EJD), 2020 U.S. Dist. LEXIS 244831, at *7 (N.D. Cal. Dec. 29, 2020) (sale of approximately 227 grams of fentanyl showed defendant posed a danger to the community because "[f]entanyl is among the most dangerous and deadly illegal drugs").

Notably, Defendant sold fentanyl near Eddy Street and Van Ness Avenue repeatedly— in the vicinity of an elementary school, college campuses, and low-income housing while he targeted some of the community's most vulnerable population. Defendant sold drugs repeatedly—this was not a one-time mistake. Rather, it was a pattern of calculated business conduct. Defendant essentially worked shifts in San Francisco's Tenderloin neighborhood to sell fentanyl, amongst other drugs, as a day job. Defendant is a patent danger to the community.

### V.  CONCLUSION

Defendant cannot overcome the presumption that there are no conditions that will reasonably assure his appearance at court proceedings or ensure the safety of the community. The Court should order Defendant detained pending trial.

DATED: April 5, 2023                                    Respectfully submitted,

                                                        ISMAIL J. RAMSEY
                                                        United States Attorney


                                                        */s/ Anna Nguyen*
                                                        ANNA NGUYEN
                                                        Special Assistant United States Attorney